STETSON (STURGES v.). See Cases Nos. 13.568 and 13,569.

STETSON (UNITED STATES v.). See Case No. 16,390.

STETSON, The D. S. See Case No. 4.104.

STETSON, The M. B. See Case No. 9,363.

_____

## Case No. 13,383.

### The STETTIN.

[Blatchf. Pr. Cas. 272.] [1]

District Court, S. D. New York. Dec. 13, 1862. [2]

PRIZE —VIOLATION OF BLOCKADE — LOG BOOK — FALSE DESTINATION.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. Imperfection and mutilation of the log book. False destination stated in vessel's papers.

_____

[1] [Reported by Samuel Blatchford, Esq.]
[2] [Affirmed in Case No. 13,384.]

In admiralty.

BETTS, District Judge. This vessel was English-built and documented, and was dispatched by neutral charterers from England with a large miscellaneous cargo, in May, 1862, on a round voyage to Tampico, thence to any port in the West Indies, the American States, or British North America, and back to the continent of Europe, the voyage to finally determine in the United Kingdom. The charter party was executed in London, March 4, 1862, between J. G. Pearson & Co., owners of the vessel, and Leach, Harrison & Forward, merchants of that place, shippers of the cargo. The crew list, the manifests of the cargo, and the bills of lading were all signed at Hull, in the latter part of March. The cargo was to be delivered at Tampico, to order. A letter on board, dated at Nassau, N. P., May 21, 1862, addressed to "S. Simpson, Esq., Supercargo Steamer Stettin," and signed "Henry Adderly & Co.," directed the cargo to be taken directly to St. John, N. B., as being a better market for it than Nassau. The vessel and cargo were captured by the United States steamer Bienville, at sea, near the coast of South Carolina, and about 30 miles distant from the port of Charleston, on the 24th of May, 1862, she having been cleared at Nassau for St. John, N. B., four days previously. No claim is interposed in the suit as to the cargo arrested, but the underwriters on the vessel intervene, by claim, for their interest under the policy.

The case was submitted to the court without argument upon the pleadings and proofs. The testimony of the master, the mate, the chief and the third engineer, and one seaman on the vessel was taken on preparatory examination. The witnesses state that the capture was made May 24, at 6 a. m., from 10 to 20 miles from the coast, and 35 miles outside of Charleston bar. The voyage was changed at Nassau, from Tampico to St. John. The master says that he had no knowledge that it was intended to run the vessel a different course from the one declared on the papers. The first mate and the third engineer state that they believed that the vessel was destined, when she left Nassau, for a blockaded port in the Southern States, from the proximity she made to such port; and the seaman testifies that that was the intention, because pilots were taken on board at Nassau, hired for the purpose of carrying her into a blockaded port. The master denies all knowledge of the owners or consignees of the cargo, or to whom it would belong if it reached the port of apparent destination. The first mate says that he supposed it was to go to some Southern port, and that its apparent destination was changed at Nassau, by order of Adderly & Co., of that place. The third engineer also supposed, after leaving Nassau, that the cargo was to be delivered in some port of the Southern States; and the seaman declared that it was to be carried to any Southern port they could get into, and he supposed it was to be Charleston. All the ship's company knew of the blockade of the Southern coast, and of the port of Charleston. The owners had the same knowledge. The master asserts that he does not know or believe that the vessel ever attempted to enter any blockaded port. He cannot say he ever heard anything which made him suspect or believe that the vessel was going into any port on the coast of North or South Carolina, or into any blockaded port. The first engineer declared a like ignorance on that subject. He cannot say whether or not he believes she intended to enter Charleston or any blockaded port. The third engineer says that he does not know, of his own knowledge, but he believes, from his personal observation and general information, that she was attempting to enter covertly the port of Charleston when she was captured; and the seaman says that he believes that the vessel designed and attempted to break the blockade at that time, because, about an hour and a half previous to the capture, he heard the captain say they were going to enter that port; that he, the witness, knew it before that time, from the actions of the master, who disguised the ship in her rigging and by paint, and that the intention was generally known on board a day or two previous to nearing the port. Other suspicious facts accompany the case. No log is furnished from the ship, or found with her, containing any entry after she started from the port of Nassau, May 21, 1862, and steamed out of the harbor, stopping at its entrance for passengers. That entry concludes the log, leaving space for another paragraph to fill up the page, and all the succeeding leaves of the book are blank. There are strong indications, in the interstices between the two leaves, that a full sheet has been abstracted from between the last page written on and the succeeding one left blank. The suspicion that further statements of the proceedings of the vessel were originally made, following that narrative of the voyage so commenced, arises from the fact that the official log taken from the vessel is without any entry, so that the vessel is left destitute of all record of her proceedings. Such mutilation of the log might have been effected by an adroit and careful operation, and the case does not stand before the court entitled to intendments favoring an interpretation supporting the fairness and innocency of the transactions on the voyage. The representations of the voyage in the shipping articles, manifests, and charter were palpably fictitious, as there is no reasonable support to the assertion that the vessel was expected to perform the tortuous and protracted navigation so ostentatiously set forth at her outset; and the fact that Adderly & Co., of Nassau, ap-

pear, at her first stopping place, as the umpires of her destiny, although in no way named as consignees, shippers, charterers, or agents, augments the impression that a house so long and so openly occupied in the line of trade which this vessel seems to have been actively pursuing, became actors in the enterprise, on the understanding that it should result in a formulent infraction of our belligerent rights.

I am clear that the evidence convicts the vessel and cargo of the offence charged, and that the intention and attempt of the voyage were to enter the port of Charleston, in violation of the blockade there subsisting.

[This decree was affirmed, on appeal, by the circuit court, November 14, 1863. [Case No. 13,384.]